TUCKER v. ELWELL.

(District Court, E. D. Pennsylvania. September 23, 1918.)

No. 8.

WHARVES ⬧══20(2)—INJURY TO VESSEL—UNSAFE BOTTOM—LIABILITY.

Respondent, who, knowing conditions and assuring libelant, ignorant thereof, that they were safe, invited him to berth his barge at a wharf for unloading, *held* liable for injury from grounding on obstructions alongside the pier, on ground that it occurred while she was moving there in accordance with his directions.

In Admiralty. Suit by Bernard Tucker against Samuel P. Elwell. Sur trial hearing on libel, answer, and proofs. Decree for libelant.

George P. Rich, of Philadelphia, Pa., for libelant.
Willard M. Harris, of Philadelphia, Pa., for respondent.

DICKINSON, District Judge. The principle of law invoked by the libelant is that one who, for his own benefit, induces another to bring a vessel to a wharf apparently or represented to be adapted to the safe mooring of the vessel, may be held liable for injuries to the vessel caused by obstructions unknown to the master. In Smith v. Burnett, 173 U. S. at page 433, 19 Sup. Ct. 442, 43 L. Ed. 756, the general principle, with its qualifications, and the supporting considerations, are fully stated. The ground of liability, it will be observed, is not responsibility for the creation or continued existence of the obstruction, or control of the local situation, but inducing another to unwittingly meet with injury, the danger of which is known. Woodburn v. Sheehy, 240 Fed. 952, 153 C. C. A. 638, cited by respondent, illustrates the distinction.

There is no dispute as to the principles of law applicable. The controversy is over the fact, not of injury, but how it came to be incurred. The facts are found to be:

(1) The respondent assumed to know the condition of the berth which the barge of the libelant was to occupy, and did in fact have such knowledge.

(2) Respondent invited libelant to berth the barge at the wharf, provided for its unloading, assuring the libelant that conditions were such as to justify him in believing, as he did believe, that the berth was a safe one.

(3) The injury to the barge resulted from obstructions existing, not at the place at which the barge was to be unloaded, but near to the berth provided, and the obstructions were encountered before the unloading berth was reached.

### Discussion and Further Findings.

There is little, if any, controversy over the facts, so far as above outlined. The differing versions relate to what happened between the time of an interruption of the effort to berth the barge and the sustaining of the injuries. The barge had been brought to a wharf at Pennsville.

⬧══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The general location and wharf conditions were that there was a construction extending from the shore into the river on the up-river, or what, in the evidence, is called the north, side of which was the place provided for the unloading of the barge. At the outer end of the entire construction a wharf pier head extended from the upper or north side at right angles to the main construction. The barge was brought around the end of this pier head, and the attempt was then made to have her drop back toward the shore to a position from which she could be warped alongside of the bulkhead wharf, where she was to be unloaded. This pier head was about 30 feet on its end face, and a little more than that in its extension upstream. The whole wharf construction extended into the river a little over 300 feet, and the place at which the barge was to be unloaded was about midway of the whole length of construction. In the attempt to drop the barge astern toward the shore, she grounded, so that the effort to warp her into the desired place at the wharf was for the time given up.

There is nothing in the case to indicate that there was any obstruction which would have caused injury to the barge after she had reached the berth provided for her. There were, however, such obstructions on the bottom near the wharf, further out from the shore. These obstructions were present from the corner formed by the extension of the pier head from the main construction for some distance toward the shore and out from the wharf. It was these obstructions which caused the injuries to the barge.

The real controversy is over the question of how the barge came upon the obstructions. The operation of warping the barge into its intended place was under the general charge of the respondent, who was present and gave the master directions as to the movement of the barge. The theory of the libelant is that the boat stuck upon the obstructions in the act of being moved, in accordance with the directions of the respondent. The theory of the respondent is that the barge had merely grounded at the stern, and was in a perfectly safe place, in which she could have rested upon the bottom without injury, and that she was injured because the master of the barge, in disregard of the directions of the respondent to let the barge remain where she was until the rise of the tide would permit of her being moved, attempted to swing her around nearer the wharf, and thus brought her against the obstructions. This change of position, it is averred, took place in the absence of the respondent, and brought about the damage done.

Our finding upon this point is influenced by, among other considerations, two features of the case. One is that there does not appear to have been any occasion for the master of the barge to have changed the position of his boat, and nothing to have induced him to desire to do so. On the contrary, there is an unlikelihood he would move the barge into a dangerous place, against which he had been warned by the respondent. The other is the difficulty he would have had in his effort to move the boat after she was so firmly stuck on the bottom that she could not be moved by him with the aid of the respondent.

The following additional fact findings are made, after a consideration of all the evidence:

(4) The barge was injured by grounding upon obstructions while moving, as directed by the respondent.

(5) Neither the libelant nor the master of the barge had knowledge of the danger of damage to the boat, but in taking her where she was taken the master was obeying the instructions of the respondent, and was relying upon his assurance that the movement which brought her up against the obstructions was one which could be made in safety.

(6) The respondent knew of the presence of the obstructions, and neglected to warn the libelant or the master of the barge of their existence.

### Conclusion of Law.

The conclusion reached is:

(1) The respondent is answerable in damages to the libelant for the loss sustained by him in the injury which the barge suffered, and is entitled to a decree awarding such damages, with costs. The ascertainment of the amount of the damage has, we understand, been provided for.

The libel is sustained, and a formal decree embodying these findings may be submitted.